# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Jaki Monta Dawson,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     1:15cv993 (AJT/JFA) |
| | ) |
| Daniel Pisarek,<br>    Defendant. | )<br>) |

## MEMORANDUM OPINION

Jaki Monta Dawson, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that his rights under the Fourth Amendment were violated by an unlawful traffic stop and a subsequent use of excessive force. Plaintiff also asserts two tort claims arising under Virginia law. On January 6, 2017, defendant Officer Daniel Pisarek filed a Motion for Summary Judgment with a supporting brief and exhibits [Dkt. No. 19-20], and supplied plaintiff with the notice required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). [Dkt. No. 19] In response, plaintiff filed a Motion for Judgment as a Matter of Law with a supporting brief [Dkt. No. 24-25], and defendant submitted a Response in Opposition. [Dkt. No. 26] Accordingly, this matter is now ripe for disposition. For the reasons that follow, defendant's Motion for Summary Judgment will be granted, and plaintiff's Motion for Judgment as a Matter of Law will be denied.

## I. Background

The following material facts are uncontested. On November 22, 2013, Officer Pisarek of the City of Hopewell Police Department was traveling eastbound on Oaklawn Boulevard in

1

Hopewell, Virginia when he observed another eastbound vehicle riding on the yellow line. Pisarek Decl., Dkt. No. 20, Ex. 1 at ¶ 4. Officer Pisarek radioed headquarters that he intended to stop the vehicle, which then failed to yield to his warning lights and continued for two blocks before pulling into the parking lot of a convenience store. The vehicle came to a stop leaving some distance between its front wheels and the curb, and because Officer Pisarek found that suspicious he pulled his patrol car very close to the vehicle's rear bumper. Id., ¶ 5. When Officer Pisarek exited his vehicle the driver, who was later identified as Dawson, quickly opened his door and attempted to get out of the car, but Officer Pisarek ordered him to remain inside the vehicle and to put on his seat belt as a safety precaution. Id., ¶ 6. It took Dawson five to ten seconds to comply with those instructions. Id.

After Dawson had the seat belt on Officer Pisarek approached the vehicle. Dawson immediately began to curse, to question the officer and to argue that he had done nothing wrong. Id., ¶ 7. Officer Dawson found these actions to be overly aggressive and they aroused his suspicions further. Id. Officer Pisarek instructed Dawson to open the window and Dawson said it was broken, at which point Officer Pisarek pushed it down. Id. When he did so he could smell strong odors of alcoholic beverages and fresh marijuana. Id. As Officer Pisarek was asking for plaintiff's identification and vehicle's registration plaintiff continued to interrupt him in a aggressive manner. Id., ¶ 8.

Officer Pisarek advised Dawson that he had been stopped because he was driving erratically. Id., ¶ 9. Dawson continued to argue aggressively and irrationally, and it appeared to Pisarek that the situation was deteriorating rapidly. Id. By this time Dawson was yelling, cursing, and slamming his fists on the steering wheel, and as he did so Officer Pisarek saw him extend his

2

right arm toward the passenger seat and reach under a pile of trash. Id. Officer Pisarek thought Dawson was looking for something on or under the seat, and he instructed Dawson to keep his hands on the steering wheel. Id. Dawson at that point kept his hands in Officer Dawson's sight but the officer remained concerned for his own safety and that of the public, and he requested that an additional officer respond to the scene.

When Officer Fitzsimmons of the Hopewell Police Department arrived at the scene, Officer Pisarek observed that Dawson became concerned and started looking around his vehicle. Id. ¶ 10; Fitzsimmons Decl., Dkt. No. 20, Ex. 3 at ¶ 4. It appeared to Pisarek that the arrival of Officer Fitzsimmons and that fact that additional units were setting up a wide perimeter around the area were causing Dawson to become "overly paranoid and borderline panicked." Pisarek Decl. ¶ 10. As Officer Pisarek questioned Dawson regarding his suspicion that Dawson was operating the vehicle under the influence of alcohol and illegal drugs, Dawson kept up his aggressive arguments, and Officer Pisarek ordered him to turn the vehicle off and place the keys on the dashboard. Id. ¶ 11. Dawson initially turned the engine off but then quickly restarted it and removed the keys from the ignition, stating that the key did not have to be in the ignition for the vehicle to run, and he placed the keys on the dashboard. Id.

At that point Officer Pisarek observed Dawson begin to look around "frantically" and to reach around the passenger seat, including under the pile of trash that Pisarek had specifically instructed him to avoid. Id. Based on Dawson's frantic and irrational behavior and his own 20 years of experience as a police officer, Pisarek believed Dawson was reaching for a weapon, id., a view that Officer Fitzsimmons shared. Fitzsimmons Decl. ¶ 6. Officer Pisarek drew his Taser and warned Dawson to stop reaching around the seat and to remain calm. Id. Dawson looked

3

quickly at Pisarek, grabbed the vehicle's gear shift and shifted into reverse, and the vehicle began to move backward. Id. ¶ 12; Fitzsimmons Decl. ¶ 6. The vehicle struck Officer Fitzsimmons, who had drawn his weapon and was standing to the rear of the vehicle on the right passenger side, Fitzsimmons Decl. ¶ 6, and when Officer Pisarek lost sight of Officer Fitzsimmons he believed Fitzsimmons had been run over. Pisarek Decl. ¶ 12.[1]

Dawson then pulled the vehicle forward and turned it sharply to the left. Officer Spencer, another Hopewell Police Department officer who had responded to the scene, believed at that point that Dawson was attempting to flee. Spencer Decl., Dkt. No. 20, Ex. 4 at ¶ 7. The vehicle hit Officer Pisarek on the right hip, catching his firearm, and Pisarek was able immediately to disengage and maneuver away from the vehicle. Pisarek Decl. ¶ 12. As he did so Pisarek continued to order Dawson to stop the car. Id.; Spencer Decl. ¶ 7. Nonetheless, Dawson continued to pull the vehicle forward, but when Dawson maneuvered it onto the sidewalk perpendicular to other parked vehicles, it became blocked by a cement wall and the convenience store. Pisarek Decl. ¶ 13 and Ex. A. Pisarek ran up to the driver's window and continued to command Dawson to stop driving the car and to shut it off. Id. Dawson did not comply, and continued to "frantically" look around the vehicle and the parking lot, which caused Pisarek to believe that he was about to flee the scene by backing the vehicle into his only way out, an area of the parking lot where other officers were standing. Id. and Ex. 5-12. At that point, out of concern for his own safety and that of the officers in the area, Officer Pisarek deployed his Taser directly at Dawson's chest, and one probe made contact with Dawson's chin. Id. Pisarek turned

---

[1] In fact, the vehicle struck Officer Fitzsimmons and knocked him backward, but Fitzsimmons was able to maintain his balance and run toward his patrol car. Fitzsimmons Decl. ¶ 6.

4

the electric current off before the ten-second Taser cycle was complete, and he pulled the wires off the Taser cartridge by stepping on them and breaking them. Id. At that point no electricity was flowing through the Taser, and Pisarek was able to quickly open Dawson's door and put the vehicle into park. Id. The Taser was deployed only that one time for less than ten seconds. Id. Ex. 3; Fitzsimmons Decl. § 7.[2]

Dawson was ordered out of the vehicle and was handcuffed by Officer Pisarek. Pisarek Decl. ¶ 14. A search of Dawson's person revealed a small bag of marijuana and cash in his left pocket. Id. When Officer Pisarek and other officers searched the vehicle, they located a digital scale and several one-dollar bills in the center console and around $300.00 in cash in the glove box. Id. An unknown amount of cash was discovered in the driver's side visor/mirror area, and numerous sandwich baggies were found in the rear slot of the passenger seat. Id. A bottle of tequila was also present. Id., Ex. 13-18, 20, 29. Concealed behind the passenger seat was a loaded and chambered Smith and Wesson 40-caliber pistol. Id., Ex. 21 - 23. A check of Dawson's identification disclosed that he was driving on a revoked license and was a three-time convicted felon.

When Dawson was secured Officer Pisarek called for paramedics, who responded to the scene. Id. ¶ 15. Dawson was arrested and charged with multiple offenses, and eventually was convicted of: 1) felony possession of a firearm by a nonviolent felon in violation of Va. Code § 18.2-308.2; 2) felony eluding or disregarding of police in violation of Va. Code § 46.2-817B; 3) misdemeanor driving under a revoked or suspended license in violation of Va. Code § 46.2-301);

---

[2]All of the foregoing events - from the time Officer Pisarek called in his intention to stop Dawson's vehicle until the moment he deployed his Taser - occurred in a span of four minutes. Decl. of Dispatcher Donita Pack, Dkt. No. 20, Ex. 2.

4) one count of felony assault on a law enforcement officer in violation of Va. Code § 18.2-57; and 5) misdemeanor possession of marijuana in violation of Va. Code § 18.2-250.1. Id. ¶ 16.

The events giving rise to this lawsuit as described above were not recorded. At the time of the incident Officer Pisarek believed that it was being recorded by a vehicle-mounted video system known as Silent Partner. Id. ¶ 17. However, he discovered after the fact that the camera had been installed incorrectly in his patrol car and it failed to record the incident. Id. The units driven that night by Officers Fitzsimmons and Spencer were not equipped with video systems. Fitzsimmons Decl. ¶ 12; Spencer Decl. ¶ 13. None of the officers was wearing a body camera. Pisarek Decl. ¶ 17; Fitzsimmons Decl. ¶ 12; Spencer Decl. ¶ 13.

After receiving the Roseboro notice supplied by the defendant, Dawson responded by filing his Motion for Judgment as a Matter of Law and a supporting brief, which consist largely of a reiteration of the factual allegations in the complaint. [Dkt. No. 24 - 25] Although plaintiff requests that the Court enter "judgment as a matter of law, in his favor," he also states that he wishes the motion and brief to serve as his "opposition toward the motion for summary judgment filed by the defense." Id. at 1, 2. To the extent that plaintiff would have his submission construed as an opposition to defendant's summary judgment request, there are two problems.

First, the motion and brief may have been filed untimely. Defendant filed his Motion for Summary Judgment on January 6, 2017 [Dkt. No. 19] and his Roseboro notice informed plaintiff that Local Rule 7(k) requires that any response "must be filed ... within twenty-one (21) days of the date on which the Defendant's Motion for Summary Judgment was filed...." Id. Dawson certified that he "used the institutional mailing system" to send the motion and brief to this court on January 20, 2017, Pet. Br. at 18, and the general rule is that a pleading submitted by an

6

incarcerated litigant acting pro se is deemed filed when the prisoner delivers the pleading to prison officials to mailing. Houston v. Lack, 487 U.S. 266 (1988). Here, however, both the motion and brief were not date-stamped as received by the Clerk until February 7, 2017, some three weeks after plaintiff certified they were delivered to prison officials for mailing and 11 days after they were due to be filed in this court. Even for mail originating in a penal facility, this was an inordinately lengthy delay.

A second problem with plaintiff's purported opposition to the summary judgment motion is that it lacks notarization or a clear statement by the plaintiff that his account of events is true and correct and a clear declaration of its authenticity. Instead, plaintiff states only: "I hereby certify on this 20th day of January I Jaki M. Dawson excepting if anything presented was untrue or incorrect the penalty of perjury (2017)." Only if this ambiguous statement were deemed to subject plaintiff to the penalty of perjury for any misstatements can his brief be considered as an opposition to the summary judgment motion. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion).

Under other circumstances, information could be sought from prison mailroom logs to determine whether plaintiff actually filed his Motion for Judgment and Brief in Support in accordance with Rule 7(k), and he could be required to make a clearer declaration that the information provided is true and correct and filed under the penalty of perjury. However, in this case those steps are unnecessary, because even if the substance of plaintiff's pleadings is considered , the defendant is still entitled to summary judgment.

## II. Summary Judgment Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

## III. Analysis

Defendant Officer Pisarek is plainly entitled to the summary judgment he seeks on both of plaintiff's § 1983 claims.[3] Plaintiff's claim that his rights under the Fourth Amendment were violated when he was stopped by Officer Pisarek fails because Pisarek had at least a reasonable suspicion that plaintiff was driving while intoxicated in violation of Va. Code § 18.2-266, which provides:

> It shall be unlawful for any person to drive or operate any motor vehicle ... (ii) while such person is under he influence of alcohol, [or] (iii) while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, to a degree which impairs his ability to drive or operate any motor vehicle...."

For Fourth Amendment purposes, "probable cause" means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown that the suspect has committed, is committing, or is about to commit an offense." Michigan v. De Fillippo, 443 U.S. 31, 37 (1979). In analyzing probable cause, a court must limit its consideration to the facts and circumstances perceived by the officer at the time of the incident. Wilson v. Kittoe, 337 F.3d 392, 399-400 (4th Cir. 2003). In the instance of a traffic stop, "[a]s a general mater, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation

---

[3]Officer Pisarek argues as a threshold matter that the amended complaint should be dismissed because the sole relief plaintiff sought there was an investigation of the officer for selective enforcement, a remedy this Court cannot provide. Def. Br. at 10. In plaintiff's Brief, however, he seeks to add a claim for $1.2 million in damages. Pl. Br. at 10. Because defendant's entitlement to judgment on the substance of plaintiff's claims is clear, the Court chooses to forego this argument in favor of dispensing with the claims on their merits. See United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993) (Fourth Circuit strongly favors resolution of cases on their merits).

has occurred." United States v. Williams, 945 F.Supp. 2d 665, 670 (E.D. Va. 2013)(quoting Whren v. United States, 571 U.S. 806, 810 (1996)). In such instances, "probable cause is not an indispensable component of reasonableness," id., and police "can stop and detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if they lack probable cause under the Fourth Amendment." Id., (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

In this case, Officer Pisarek observed Dawson's vehicle "riding on the yellow line" three times before he stopped the vehicle. Pisarek Decl. ¶ 4. Dawson does not dispute that Officer Pisarek began to follow him when his "left tire touched the line." Pl. Brief at 1. While this observation arguably could support a finding that Officer Pisarek had probable cause to stop plaintiff's vehicle, it unquestionably supports the determination that the officer had a "reasonable suspicion" that the occupant of the vehicle was driving while intoxicated. See Williams, 945 F. Supp. at 674 ("Generally, an officer's observations that a car is weaving can justify a stop based on the officer's belief that the driver may be impaired.") Further, in this case Officer Pisarek's suspicions were confirmed when he lowered the driver's window while interrogating Dawson and smelled the aromas of alcohol and fresh marijuana inside the vehicle. For these reasons, Officer Pisarek's stop of Dawson was lawful and did not violate the plaintiff's Fourth Amendment rights, and he is entitled to summary judgment as a result.

As to plaintiff's contention that Officer Pisarek's deployment of his Taser constituted an excessive use of force, a "'claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of a person' is 'properly analyzed under the Fourth Amendment's objective reasonableness standard.'" Estate of Armstrong ex rel.

10

Armstrong v. Village of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)). Reasonableness in this context is determined based strictly on the information possessed by the officer at the moment that the force is employed. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996). Thus, the objective facts "must be filtered through the lens of the officer's perceptions at the time of the incident in question." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). This "limits second-guessing the reasonableness of actions with 20/20 hindsight" and " limits the need for decision-makers to sort through conflicting versions of the 'actual' facts and allows them to focus instead on what the police officer actually perceived." Id.

The Supreme Court recognizes that the determination of reasonableness under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. The Court has enumerated three factors to guide this balancing. "First we look to the 'severity of the crime at issue'; second, we examine the extent to which 'the suspect poses an immediate threat to the safety of the officer or others'; and third, we consider 'whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Id. Here, all of these factors support the conclusion that Officer Pisarek did not violate Dawson's Fourth Amendment rights.

Officer Pisarek stopped plaintiff's vehicle when the erratic manner in which it was being operated made him reasonably suspicious that the driver was intoxicated. Nonetheless, he did not immediately discharge his Taser or take any other action to subdue plaintiff. Instead, before any force was employed, the following series of events transpired: 1) Dawson failed to roll down

his window when Pisarek directed him to do so; 2) after opening the window himself, Pisarek smelled the odors of alcohol and fresh marijuana emanating from the vehicle; 3) Dawson argued aggressively with Pisarek about the stop and became increasingly irrational until he was yelling, cursing, and slamming his fists on the steering wheel; 4) Dawson repeatedly searched around and underneath the passenger seat in violation of Pisarek's instructions, causing Pisarek to suspect that he was looking for a weapon; 5) Dawson refused to turn off the vehicle in violation of Pisarek's instructions; 6) Dawson reacted to Pisarek's warning to stop reaching around the vehicle and remain calm by shifting into reverse and operating the vehicle in such a way that it struck both Pisarek and Officer Fitzsimmons; 7) Dawson then drove the vehicle forward until it became blocked, and he ignored additional instructions from Pisarek to shut off the engine and stop reaching around the vehicle's interior; and 8) it appeared to Pisarek that Dawson intended to drive the vehicle through an area where additional officers were located.

Based on these events and the perceptions they aroused in Officer Pisarek, it was reasonable for him to conclude that if he did not take action to detain Dawson, Dawson could have either gained control of a weapon located in the vehicle or continued to drive the vehicle in a reckless and dangerous manner. Either eventuality would have jeopardized the safety of all of the individuals at the scene, and it is recognized that the use of even deadly force by an officer is not excessive where the officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer himself or to others. Tennessee v. Garner, 471 U.S. 1, 11 (1985). This principle applies equally when the threat of harm comes from a motor vehicle as well as a gun. Waterman v. Batton, 393 F.3d 471, 477 (4th Cir. 2005).

Here, by the time Pisarek deployed his Taser, Dawson has clearly demonstrated his

willingness to use his vehicle as a weapon by striking both Officers Pisarek and Fitzsimmons with it. In addition, Pisarek reasonably (and, as it turned out, correctly) suspected that Dawson had a gun in the car. Although the court in Waterman determined that an officer's use of deadly force was not excessive under such circumstances, in this case Pisarek used only a single application of non-lethal force to subdue and detain Dawson.

As to the third factor outlined in Graham, Dawson's actions reasonably suggested to Pisarek that he was actively attempting to resist arrest and flee the scene. As described above, Dawson became combative and frantic when additional officers arrived at the scene to assist Pisarek, and he repeatedly disobeyed Pisarek's instructions to turn off his engine. He also maneuvered his vehicle during the course of the incident to a sidewalk adjacent to the convenience store and perpendicular to the marked parking spaces, a position from which he could have fled. Pisarek Decl., Ex. 1-4.

In short, consideration of all of the foregoing facts and circumstances mandates the conclusion that Officer Pisarek's single use of non-deadly force was justified and did not constitute a violation of Dawson's Fourth Amendment rights. See Meyers v. Baltimore County, Md., 713 F.3d 723, 733-34 (4th Cir. 2013) (holding that an officer who deployed a Taser three times did not use excessive force when the suspect was acting erratically, holding a baseball bat, and advancing on the officer).

Nothing in plaintiff's Brief in Support changes this conclusion. As noted above, much of the brief amounts to a recitation of the facts as stated in the complaint, and Dawson argues based on a partial transcript of a hearing in his criminal proceedings he attaches as an exhibit that Officer Pisarek was "deceitful" about various details. Id. at 17. None of the circumstances with

which Dawson takes issue are material to the issues before this Court. For instance, he states that he was reaching all through the vehicle because he had a sandwich on the passenger seat. Id. at 7. Even if true, this detail is immaterial to the issue of reasonableness, since the act of searching itself caused Officer Pisarek to have a reasonable fear that a weapon might be present in the vehicle. Elliott, 99 F.3d at 643. Dawson also states that Pisarek actually tased him not once but twice. Id. at 17. Again, even if true, such a use of force would not have been excessive given the circumstances Pisarek faced. Meyers, 713 F.3d at 733-34. The greatest divergence between the events as described by Pisarek and other officers and those asserted by Dawson is that the plaintiff accuses Pisarek of tampering with the event report, "gather[ing] officers," and intentionally destroying video evidence of the events in question because "the truth would have set Dawson free." Id. at 10, 15-16. "[W]holly speculative assertions" such as these which are unsubstantiated by any evidence do not suffice to defeat summary judgment. Ross, 759 F.2d at 364. Accordingly, summary judgment will be entered in the defendant's favor on both of plaintiff's § 1983 claims arising under the Fourth Amendment, and plaintiff's Motion for Judgment as a Matter of Law on those claims will be denied.[4]

The defendant also asserts the defense of qualified immunity. Because Dawson fails to establish a violation of his rights under the Fourth Amendment, the Court need not address

---

[4]The Court notes that in the section of Dawson's Brief titled "Relief Sought by Plaintiff," he asserts that he "has lost life, liberty and property do [sic] to the false accusations of Pisarek," he is wrongfully serving a 10-year sentence, and he wishes to be reunited with his family. Id. at 10. To the extent that these statements appear to challenge the validity of plaintiff's convictions, he is advised in deference to his pro se status that such a claim must be brought in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 after full exhaustion of available state court remedies. Additionally, to the extent that plaintiff asserts in his Brief that his Fourth Amendment rights were violated by an illegal search and seizure of evidence from the vehicle, id. at 4, no such claim is before the Court as it was not pleaded in the Amended Complaint.

qualified immunity. See Shabazz v. Va. Dep't of Corr., 2013 WL 1098102, at *9 n. 20 (E.D. Va. Mar. 15, 2013); Long v. Beres, 2013 WL 139342, at *5 n. 14 (E.D. Va. Jan. 10, 2013).

Lastly, at this juncture plaintiff's claims for assault and battery and false imprisonment and/or malicious prosecution arising under Virginia state law are subject to dismissal. Where § 1983 claims over which a district court otherwise would have original jurisdiction are subject to dismissal, there remains no basis to exercise supplemental or pendant jurisdiction over state tort claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); White v. Ammar's, Inc., 1988 WL 1077 at *1 (4th Cir. 1988) ("Because there is no subject matter jurisdiction, White's additional claims regarding pendant jurisdiction were properly dismissed.") Because both of plaintiff's § 1983 claims are subject to resolution in defendant's favor, subject matter jurisdiction over plaintiff's tort claims does not exist, and they will be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3).

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted, and summary judgment will be entered in his favor on plaintiff's § 1983 Fourth Amendment claims. Plaintiff's Motion for Judgment as a Matter of Law on those claims will be denied, and his state tort claims will be dismissed pursuant to Fed. R. Civ. P. 12(h)(3). An appropriate Order and judgment shall issue.

Entered this 21st day of August 2017.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge

15